```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
UNITED STATES OF AMERICA                :
                                        :
     -against-                          :    No. 01 Cr. 257 (JFK)
                                        :
GINO BRUNETTI a/k/a Herbert             :    OPINION & ORDER
Alberto Cruz-Ruiz,                      :
                                        :
                         Defendant.     :
---------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 04/09/2021

APPEARANCES

FOR DEFENDANT GINO BRUNETTI:
    Pro Se

FOR THE UNITED STATES OF AMERICA:
    Kevin Mead
    U.S. ATTORNEY'S OFFICE FOR THE SOUTHERN DISTRICT OF NEW YORK

**JOHN F. KEENAN, United States District Judge:**

Before the Court is a motion by Defendant Gino Brunetti seeking a sentence reduction to time served and his immediate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A), commonly known as the compassionate release statute. The Government concedes that, due to the deadly and ongoing pandemic caused by the coronavirus, COVID-19, Brunetti's history of coronary artery disease qualifies as an "extraordinary and compelling" reason for a reduction in his sentence. Nevertheless, the Government argues, the 18 U.S.C. § 3553(a) sentencing factors do not warrant a modification to Brunetti's term of incarceration.

1

For the reasons set forth below, Brunetti's motion is DENIED.

## I. Background

Unless otherwise noted, the following is taken from the materials the parties submitted, Brunetti's Presentence Investigation Report ("PSR"), revised as of January 6, 2003, and the Second Circuit's decision affirming Brunetti's conviction, United States v. Brunetti, 376 F.3d 93 (2d Cir. 2004) (per curiam).  In ruling on Brunetti's request, the Court has considered the arguments advanced in his motion, (ECF No. 309), the Government's letter in opposition, (ECF No. 312), and Brunetti's reply, (ECF No. 313).

On August 22, 2001, Brunetti, a Columbian National who was residing in Mexico, was arrested in Mexico by the Mexican army and transferred to the United States in connection with a large-scale narcotics-trafficking investigation by the Drug Enforcement Agency ("the DEA"). PSR ¶ 27; Brunetti, 376 F.3d at 94.  On May 22, 2002, Brunetti was charged with conspiracy to distribute and possess with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. §§ 841 and 846; distributing and possessing with intent to distribute fifty or more kilograms of cocaine, in violation of 21 U.S.C. § 841; and importing into the United States five kilograms or more of cocaine, in violation of 21 U.S.C. § 963. PSR ¶¶ 2-4.  The

charges stemmed from Brunetti's role as the main source of cocaine to a drug-trafficking organization in the New York City area, during which he brokered deals involving significant quantities of cocaine and was the source of a 50-kilogram shipment of cocaine which was seized during the DEA's investigation. Id. ¶ 27.

On May 9, 2002, the Government filed a prior felony information against Brunetti, pursuant to 21 U.S.C. § 851, based on his two prior narcotics convictions for (1) distribution of cocaine in the Central District of California, for which he was sentenced to ten years' federal imprisonment in February 1988, and (2) possession of narcotics for sale in the State of California, for which he was sentenced to two years' state imprisonment in November 1986. Id. ¶¶ 5-6, 79-84; Brunetti, 376 F.3d at 94.  As a result of the filing, Brunetti faced a mandatory minimum life sentence in this case. Brunetti, 376 F.3d at 94.

Brunetti sought to proffer with the Government to avoid the mandatory life sentence, and, as a result, he agreed to plead guilty to all three counts pursuant to a plea agreement in exchange for the opportunity to proffer. Id.  Following Brunetti's plea before Judge Allen G. Schwartz (to whom this case was originally assigned) Brunetti sat for two proffer sessions with the Government. Id.  The Government, however,

declined to enter into a cooperation agreement with him. Id. After Judge Schwartz's death, Brunetti's case was transferred to this Court for post-plea proceedings, including sentencing. Id. at 94 n.1.

"Faced with the fact that his proffer strategy had not turned out as he had hoped," Brunetti requested this Court reduce his sentence. Id. at 94.  On August 11, 2003, however, this Court rejected Brunetti's request and sentenced him to two concurrent terms of life imprisonment and one additional concurrent term of 120 months' imprisonment to be followed by ten years of supervised release. Id. at 94-95.  On July 22, 2004, the Second Circuit affirmed Brunetti's conviction. Id. at 96.  To date, he has served approximately 19-and-a-half years in prison.

On February 17, 2021, Brunetti, proceeding pro se, submitted a motion requesting his sentence be reduced to time served.  (ECF No. 309.)  Brunetti's motion explained that he warrants release because (1) he was sentenced under the so-called "three-strike rule" of 21 U.S.C. § 851, which Congress later amended to eliminate the mandatory minimum life sentence; (2) he has matured and made significant efforts at rehabilitation while in prison; and (3) he suffers from certain health issues which place him at undue risk of a severe illness or death should he contract COVID-19.  On March 7, 2021, the

4

Government opposed Brunetti's request on the grounds that his immediate release would be inappropriate under the sentencing factors set forth in 18 U.S.C. § 3553(a). (ECF No. 312.) On March 31, 2021, Brunetti filed a reply in which he reiterated his request for release and argued that he is similarly situated to certain other defendants to whom a small number of courts have ordered reductions in sentence. (ECF No. 313.)

## II. Discussion

### A. Legal Standard

18 U.S.C. § 3582(c)(1)(A) allows a court to modify a term of imprisonment "upon motion of the defendant" provided the defendant has exhausted certain administrative requirements. 18 U.S.C. § 3582(c)(1)(A). Under these circumstances, a court may reduce the defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Id. § 3582(c)(1)(A)(i). In doing so, the Court must also consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." Id. § 3582(c)(1)(A). "Application of the § 3553(a) factors requires an assessment of whether the relevant factors outweigh the extraordinary and compelling reasons warranting compassionate release and whether compassionate release would undermine the goals of the original sentence." United States v. Daugerdas, ---

5

F. Supp. 3d ---, No. 09 Cr. 581 (WHP), 2020 WL 2097653, at *4 (S.D.N.Y. May 1, 2020) (brackets, ellipsis, and internal quotation marks omitted) (quoting United States v. Ebbers, 432 F. Supp. 3d 421, 430–31 (S.D.N.Y. 2020)).

In the Second Circuit, the policy statement issued by the U.S. Sentencing Commission pertaining to compassionate release, section 1B1.13 of the Sentencing Guidelines, "is not 'applicable' to compassionate release motions brought by defendants," and "cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling." United States v. Brooker, 976 F.3d 228, 236 (2d Cir. 2020). Accordingly, as the court in United States v. Harris, No. 15 Cr. 445 (PAE), 2020 WL 5801051 (S.D.N.Y. Sept. 29, 2020), explained:

> when assessing a motion brought directly by an imprisoned person rather than by the [Bureau of Prisons ("the BOP")], the Court is constrained neither by [§] 1B1.13's enumeration of extraordinary and compelling reasons, nor by its freestanding requirement that the defendant seeking release not pose any danger to the community. Rather, the Court may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." However, even if such reasons are present, the Court must also assure itself that release is consistent with "the factors set forth in section 3553(a) to the extent that they are applicable."

Id. at *2 (footnote and internal citations omitted).

"[P]ro se litigants generally are entitled to a liberal construction of their pleadings, which should be read 'to raise

6

the strongest arguments that they suggest.'" Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)).

### B.  Analysis

Brunetti argues that extraordinary and compelling reasons exist warranting his immediate release because his current sentence is unfairly long, he has amassed a remarkable record of rehabilitation, and the COVID-19 pandemic poses undue health risks to him.  (Motion for Compassionate Release at 5–12, ECF No. 309.)  The Government concedes that Brunetti has demonstrated "extraordinary and compelling reasons" for a modification to his sentence because he suffers from moderate coronary artery disease, which the Centers for Disease Control and Prevention ("the CDC") consider a high-risk factor for a severe illness from COVID-19.  (Gov't's Letter in Opposition at 4, ECF No. 312.)  Nevertheless, the Government argues, the § 3553(a) factors weigh against Brunetti's release.  The Court agrees with the Government.

Section 3553(a) requires "a sentence sufficient, but not greater than necessary," to achieve the purposes of sentencing. 18 U.S.C. § 3553(a).  In determining the particular sentence to be imposed, courts must consider "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as "the kinds of sentences available" and

"the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Id. §§ 3553(a)(1), 3553(a)(3), 3553(a)(6).

Construing Brunetti's pro se papers to raise the strongest arguments they suggest, Brunetti argues that the § 3553(a) factors favor his immediate release because of the need to avoid disparate treatment due to (1) the First Step Act's reduction of the applicable mandatory minimum sentence from life to 25 years, see Pub. L. No. 115-391, § 401(a)(2), 132 Stat. 5194, 5220 (2018), and (2) Judge Torres's recent award of compassionate release to one of Brunetti's co-defendants (and the conspiracy's ringleader), Luis Rojas, see United States v. Rojas, 01 Cr. 257 (AT), Dkt. No. 304 (S.D.N.Y. Dec. 18, 2020).  Further, Brunetti argues, his history and characteristics now weigh in favor of a less severe sentence in light of his efforts at rehabilitation and the health risks posed by COVID-19.  The Court addresses each purported mitigating factor in turn below.

### 1. First Step Act

Brunetti argues that he deserves a sentence reduction because the 21 U.S.C. § 851 enhancement that resulted in his mandatory life imprisonment would carry only a 25-year minimum sentence were he sentenced today.  The Court is not persuaded.

First, Congress specifically chose not to make retroactive its amendments to the relevant statutes at issue here. See First

8

Step Act of 2018, Pub. L. No. 115-391, § 401(c), 132 Stat. 5194, 5221 (2018).  "Though the disparity in [the defendant's] sentence measured against offenders sentenced after passage of the First Step Act may seem unfair, that disparity was clearly contemplated by Congress when it decided not to make the Act's sentencing reforms retroactive." Musa v. United States, --- F. Supp. 3d ---, No. 19 Civ. 9130 (RJS), 2020 WL 6873506, at *8 (S.D.N.Y. Nov. 23, 2020) (denying release to a defendant who, like Brunetti, was sentenced to a term of life imprisonment under 21 U.S.C. §§ 841(b)(1)(A) and 851); see also United States v. Haynes, 456 F. Supp. 3d 496, 516 (E.D.N.Y. 2020) (explaining "the Congressional decision not to make [certain of the First Step Act's] change[s] retroactive spares the courts an avalanche of applications and inevitable re-sentencings, no doubt in many cases that do not feature the same grave characteristics presented here").

Second, even if the Court were inclined to reconsider Brunetti's sentence in light of the First Step Act, he nevertheless would still face a 25-year mandatory minimum.  To date, however, Brunetti has only served approximately 19-and-one-half years of his sentence.  Accordingly, Brunetti is not deserving of immediate release under the First Step Act in any event and this factor does not weigh in his favor at this time. Cf. Speed v. United States, No. 04 Cr. 336 (PKC), 2021 WL

9

1085360, at *4 (S.D.N.Y. Mar. 22, 2021) (explaining that a nonretroactive intervening change in the law does not mandate a finding of extraordinary and compelling reasons for a sentence reduction); United States v. Lorenzano, No. 03 Cr. 1256 (JFK), 2021 WL 734984, at *3 (S.D.N.Y. Feb. 24, 2021) (ruling the First Step Act's recent amendments, standing alone, do not constitute an extraordinary and compelling reason for a sentence reduction).

### 2.  Luis Rojas

Brunetti next argues that he is deserving of a sentence reduction because, on December 18, 2020, Judge Torres granted compassionate release to Luis Rojas, one of Brunetti's co-defendants in the narcotics-trafficking conspiracy. See United States v. Rojas, 01 Cr. 257 (AT), Dkt. No. 304 (S.D.N.Y. Dec. 18, 2020).  Once again, the Court is not persuaded.

Here, the circumstances of Rojas's compassionate release are readily distinguishable from Brunetti's request for similar relief.  Rojas had served nearly 20 years of a 30-year sentence that was imposed following his guilty plea to one count of conspiring to distribute and possess with intent to distribute narcotics, in violation of 21 U.S.C. § 846.  While Rojas was alleged to be the leader of the drug-trafficking organization at the center of this case, he and Brunetti cannot be said to have similar records or to have been found guilty of similar conduct

10

where Brunetti was the main source of Rojas's cocaine and he pleaded guilty to not merely conspiracy, but distribution and importing offenses as well.  Indeed, as discussed above, and unlike Rojas, Brunetti's offense conduct resulted in a sentence of two concurrent life terms of imprisonment and a concurrent 10-year term of imprisonment.  Unlike Rojas, Brunetti's sentence did not anticipate him ever being released from federal custody.  Accordingly, Rojas's recent compassionate release, which Judge Torres granted due to the health risks he faced from COVID-19 and because he would be immediately deported, does not tip the scale in favor of Brunetti's similar immediate release.

### 3. Rehabilitation

Next, Brunetti argues that his sentence should be reduced because he has demonstrated extraordinary rehabilitation during his time in prison.  Once again, the Court is not persuaded.

First, Brunetti has not demonstrated that he is no longer a danger to the public.  Brunetti is a "career offender" within the meaning of § 4B1.1 of the Sentencing Guidelines who has amassed a multi-decade record of serious narcotics distribution offenses, including significant terms of incarceration that did not deter Brunetti from engaging in his criminal conduct in this case. PSR ¶¶ 75, 78-88.

Second, the circumstances in the case law Brunetti cites are readily distinguishable from his own.  For example, in

11

United States v. Panton, No. 89 Cr. 346 (LAP), 2020 WL 4505915, at *1–2, 9 (S.D.N.Y. Aug. 4, 2020), the court found extraordinary and compelling circumstances where the defendant had served 30 years of a life sentence that the Probation Department had opined as "unduly harsh" prior to sentencing and which was imposed following the defendant's conviction for conspiracy to possess and distribute approximately 41 kilograms of heroin.  Notably, the defendant's prior criminal history was minor—two low-level state misdemeanors, neither of which resulted in a prison term or even a probationary sentence—and he had a stellar disciplinary record. See id. at *2–3, 7–9. Likewise, in United States v. Millan, No. 91 Cr. 685 (LAP), 2020 WL 1674058, at *8 (S.D.N.Y. Apr. 6, 2020), the defendant was a first-time offender who had served more than 28 years of a life sentence imposed following his conviction for participating in a large-scale heroin distribution operation.  Despite having had no realistic hope of release, the defendant conducted himself as a model prisoner, demonstrated exceptional character, and received support for a sentence of time served from the BOP staff at his facility. See id.  And, in United States v. Rodriguez, --- F. Supp. 3d ---, No. 00 Cr. 761 (JSR), 2020 WL 5810161, at *1, 4 (S.D.N.Y. Sept. 30, 2020), the court denied the defendant's request for immediate release, but concluded that, after 20 years' imprisonment, a reduction in sentence from

12

life to one of 30 years with a lifetime of supervised release was appropriate where the defendant provided "[a]n extraordinary collection of letters—from fellow inmates, family, friends, and, most important, 27 members of the prison staff" that made clear that he was "wholly rehabilitated." See also United States v. Marks, 455 F. Supp. 3d 17, 27, 33 (W.D.N.Y. 2020) (noting numerous letters from individuals with no obvious stake in the defendant's request for a reduction in sentence—such as BOP officials and fellow inmates—which attested to the defendant's good works during his incarceration); but see United States v. Castillo, No. 03 Cr. 979 (KMW), 2021 WL 268638, at *5 (S.D.N.Y. Jan. 27, 2021) (finding rehabilitation not sufficiently extraordinary and compelling even where three BOP employees wrote positive letters of recommendation).

Accordingly, while Brunetti's efforts at rehabilitation are commendable, his criminal conduct in this case, together with his significant prior criminal history, do not weigh in favor of immediate release.

### 4.  COVID-19

Finally, Brunetti argues that the threat posed by COVID-19 to a 60-year-old individual such as himself, who suffers from coronary artery disease, high-blood pressure, high-cholesterol, and gout, weighs in favor of immediate release.  The Court disagrees.

Here, although the Government acknowledges the CDC's guidance that an individual with coronary artery disease faces an increased risk for a severe illness from COVID-19, Brunetti's medical records reflect that he tested positive for the disease in July 2020 and, fortunately, he appeared to be asymptomatic and to have recovered from it.  "[H]aving now contracted the virus, the fundamental and overriding purpose of [Brunetti's] request for immediate release—i.e., the desire to remove him from an environment where he may be exposed to the virus—is significantly less compelling." United States v. Maldonado, No. 17 Cr. 530 (JFK), 2021 WL 1131411, at *3 (S.D.N.Y. Mar. 24, 2021); see also United States v. Rodriguez-Francisco, No. 13 Cr. 233 (VB), 2021 WL 326974, at *2 (S.D.N.Y. Feb. 1, 2021) (explaining that "a sentence reduction based on the risk of contracting [COVID-19] again makes no sense" where the defendant tested positive for the virus in December 2020 and, although he claimed "to have lingering effects," "his risk of reinfection is extremely low" "because he has already had (and fortunately recovered from) the disease") (citing the CDC's website).  "The current COVID-19 pandemic is an unprecedented worldwide catastrophe.  But it does not warrant the early release of sentenced inmates in federal prisons convicted of serious, dangerous offenses, like [the defendant], whose medical conditions and risk of contracting the virus cannot be deemed

14

'extraordinary and compelling.'" United States v. Mood, No. 19 Cr. 113 (VB), 2020 WL 3256333, at *1 (S.D.N.Y. June 16, 2020) (denying release to 53-year-old with diabetes, hypertension, and obesity where "[t]here is no question that [the defendant] has health issues, but his condition is stable and has been effectively managed by routine monitoring and medication").

In sum, the 3553(a) sentencing factors that weigh in Brunetti's favor, such as the need to provide necessary medical care, are overshadowed by the combined force of "the nature and circumstances of the offense" (i.e., Brunetti's key role in a large-scale cocaine-importation and distribution conspiracy), "the history and characteristics of the defendant" (i.e., Brunetti's repeated involvement, even after lengthy prison terms, in narcotics distribution operations), and the need for the sentence imposed to "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense," "afford adequate deterrence to criminal conduct," and "protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(1), 3553(a)(2).  The Court is sensitive to Brunetti's argument regarding a possible disparity between his current sentence and those of similarly charged defendants after passage of the First Step Act—but, again, Congress chose not to make those amendments retroactive, and, at this time and on the record here, the Court does not

deem such a disparity to be "unwarranted." Id. § 3553(a)(6). Indeed, Brunetti has served less than 20 years of a sentence that, even under the First Step Act's amendments, necessitates, at a minimum, at least 25 years' incarceration.  Accordingly, granting Brunetti the relief he seeks would disserve the above important sentencing factors.  His motion must be denied. Cf. Musa, 2020 WL 6873506, at *13; United States v. Rosa, No. 11 Cr. 569 (PAC), 2020 WL 6075527, at *3 (S.D.N.Y. Oct. 15, 2020) (denying compassionate release despite the presence of "extraordinary and compelling reasons" because the § 3553(a) factors did not favor such relief).

### III. Conclusion

For the reasons set forth above, Defendant Gino Brunetti's motion for a reduction in sentence is DENIED.

The Clerk of Court is directed to terminate the motion at ECF No. 309.

**SO ORDERED.**

Dated:   New York, New York
         April 9, 2021

_____
John F. Keenan
United States District Judge

16