**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  1/10/2022
```

------------------------------------X

UNITED STATES OF AMERICA     :

                       :

    -against-             :     No. 01 Cr. 257 (JFK)

                       :

GINO BRUNETTI a/k/a Herbert   :     **OPINION & ORDER**
Alberto Cruz-Ruiz,          :

                       :

            Defendant.   :

------------------------------------X

APPEARANCES

FOR DEFENDANT GINO BRUNETTI:
    Pro Se

FOR THE UNITED STATES OF AMERICA:
    Kevin Mead
    U.S. ATTORNEY'S OFFICE FOR THE SOUTHERN DISTRICT OF NEW YORK

**JOHN F. KEENAN, United States District Judge:**

Before the Court is Defendant Gino Brunetti's renewed pro

se motion for compassionate release (the "Renewed Motion")

pursuant to 18 U.S.C. § 3582(c)(1)(A). (Renewed Motion, ECF No.

321.) In his motion, Brunetti seeks a reduction of his sentence

to time served and his immediate release from custody. The

Government opposes Brunetti's motion on the grounds that he has

failed to establish that "extraordinary and compelling reasons"

exist warranting his release and the sentencing factors of 18

U.S.C. § 3553(a) weigh against modifying his life sentence.

(Gov't Letter in Opp'n; ECF No. 323.) For the reasons set forth

below, Brunetti's Renewed Motion is GRANTED.

**I.  Background**

1

On August 22, 2001, Brunetti, a Columbian national, was arrested by the Mexican Army and transferred to the United States in connection with a Drug Enforcement Agency ("the DEA") investigation into large-scale narcotics-trafficking. (Presentence Report ("PSR") ¶ 27.)  On May 22, 2002, Brunetti was charged with conspiracy to distribute and possess with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. §§ 841 and 846; distributing and possessing with intent to distribute fifty or more kilograms of cocaine, in violation of 21 U.S.C. § 841; and importing five kilograms or more of cocaine into the United States, in violation of 21 U.S.C. § 963.  (PSR ¶¶ 2-4.)  The charges stemmed from Brunetti's role as the main source of cocaine for a drug-trafficking organization in the New York City area.  (Id.) Brunetti was responsible for facilitating the delivery of large quantities of cocaine into the United States, including a 50-kilogram shipment that was seized during the DEA's investigation.  (Id. ¶ 27.)

On May 9, 2002, the Government, pursuant to 21 U.S.C § 851, filed a Prior Felony Information against Brunetti based on his two prior convictions for: (1) distribution of cocaine in the Central District of California, for which he was sentenced to ten years of imprisonment in February 1988; and (2) possession of narcotics for sale in the State of California, for which he

was sentenced to two years of state imprisonment in November 1986.  (Id. ¶¶ 5-6, 79-84.)  As a result of the filing, Brunetti faced a mandatory minimum life sentence.  See United States v. Brunetti, 376 F.3d 93, 94 (2d Cir. 2004) (per curiam).

Hoping to avoid the mandatory life sentence, Brunetti sought to proffer with the Government.  Id.  Following a period of negotiations, Brunetti agreed to plead guilty to all three counts pursuant to a plea agreement in exchange for the opportunity to engage in a post-plea proffer session.  Id. Following his plea before Judge Allen G. Schwartz (to whom this case was originally assigned), Brunetti sat for two proffer sessions with the Government.  Id.  The Government, however, ultimately declined to enter into a cooperation agreement with Brunetti and, following Judge Schwartz's death, Brunetti's case was transferred to this Court for post-plea proceedings, including sentencing.  Id. at 94 n.1.

"Faced with the fact that his proffer strategy had not turned out as he had hoped," Brunetti asked this Court to reduce his sentence.  Id. at 94.  On August 11, 2003, this Court rejected Brunetti's request and sentenced him to two concurrent terms of life imprisonment and one additional concurrent term of 120 months' imprisonment to be followed by ten years of supervised release.  Id. at 94-95.  On July 22, 2004, the Second Circuit affirmed Brunetti's conviction.  Id. at 96.

3

On February 17, 2021, Brunetti, proceeding pro se, filed a
motion for compassionate release.  (ECF No. 309.)  In his
initial motion, Brunetti argued that extraordinary and
compelling circumstances warranted his release because: (1) he
was sentenced under the so-called "three-strike rule" of 21
U.S.C. § 851, which Congress later amended to eliminate the
mandatory minimum life sentence; (2) he had rehabilitated
himself while in prison; and (3) he suffers from certain medical
conditions that place him at high risk of developing severe
illness if infected with COVID-19.  (Id.)  In its opposition to
Brunetti's motion, the Government conceded that Brunetti's
medical conditions, combined with the COVID-19 pandemic,
amounted to "extraordinary and compelling reasons" warranting
his release.  (ECF No. 312.)  The Government argued, however,
that Brunetti's motion should be denied because any reduction in
his sentence would be inconsistent with the sentencing factors
of 18 U.S.C. § 3553(a).  (Id.)

On April 9, 2021, the Court denied Brunetti's motion,
concluding that the sentencing factors of § 3553(a) weighed
against his release.  See United States v. Brunetti, No. 01 CR.
257 (JFK), 2021 WL 1326894, at *3 (S.D.N.Y. Apr. 9, 2021),
appeal withdrawn, No. 21-1074, 2021 WL 3204824 (2d Cir. June 14,
2021) (the "April 9 Decision").  Specifically, the Court
concluded that the "factors that weigh in Brunetti's favor, such

4

as the need to provide necessary medical care, are overshadowed by the combined force of 'the nature and circumstances of the offense' . . . 'the history and characteristics of the defendant' . . . and the need for the sentence imposed to 'reflect the seriousness of the offense,' 'promote respect for the law,' 'provide just punishment for the offense,' 'afford adequate deterrence to criminal conduct,' and 'protect the public from further crimes of the defendant.'" Brunetti, 2021 WL 3204824 at *5 (quoting 18 U.S.C. §§ 3553(a)(1), (2)).

On October 18, 2021, Brunetti filed a renewed motion for compassionate release. (ECF No. 321.) In the instant motion, Brunetti reiterates his argument that his medical conditions, coupled with the presence of COVID-19 at the facility where he is incarcerated, Coleman Medium Federal Correctional Institute ("FCI Coleman"), constitute extraordinary and compelling reasons warranting his immediate release. (Id.) Additionally, Brunetti again argues that his release would be consistent with the sentencing factors of § 3553(a) because, if sentenced today, he would face a mandatory minimum sentence of 25 years of incarceration and, over the course of his imprisonment, he has amassed a significant record of rehabilitation. (Id.)

On November 2, 2021, the Government filed a letter opposing Brunetti's Renewed Motion. (ECF No. 323.) In its letter, the Government argues that extraordinary and compelling reasons no

longer support Brunetti's release because he is fully vaccinated and the COVID-19 positivity rate at FCI Coleman is exceedingly low.  (Id.)  The Government also renews its argument that any modification of Brunetti's sentence would be inconsistent with the sentencing factors of 18 U.S.C. § 3553(a) due to the seriousness of Brunetti's criminal conduct.  (Id.) Specifically, the Government notes that Brunetti was "the primary source of cocaine for a large drug-trafficking organization, and he conspired to import over 150 kilograms of cocaine in this case."  (Id.)  The Government further notes that "[t]his is [Brunetti's] third serious drug trafficking conviction, and his prior criminal history shows a pattern of immediately resuming narcotics trafficking after release from prison, undeterred even by substantial sentences."  (Id.)  On December 13, 2021, Brunetti filed a reply to the Government's Letter in Opposition.  (Reply to Gov't Letter in Opp'n, ECF No. 327.)  In his Reply, Brunetti reiterates his request for release and argues that despite being fully vaccinated, he remains particularly vulnerable to contracting COVID-19 and developing serious illness due to his underlying medical conditions and the prevalence of COVID-19 in FCI Coleman.  (ECF No. 327.)

Brunetti is 61 years old and has served approximately 20 years of his life sentence.

## II.  Applicable Law

6

Under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, a district court may reduce a defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  The Court is also required to consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable."  Id.  The § 3553(a) factors include "the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from future crimes by the defendant; and the need to avoid unwarranted sentencing disparities."  United States v. Roney, 833 F. App'x 850, 852 (2d Cir. 2020) (quoting 18 U.S.C. § 3553(a)).  Application of these factors requires a assessment of whether the "factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release . . . [and] whether compassionate release would undermine the goals of the original sentence."  United States v. Ebbers, --- F. Supp. ---, No. 02 Cr. 11443 (VEC), 2020 WL 91399, at *7 (S.D.N.Y. Jan. 8, 2020).

In the Second Circuit, the U.S. Sentencing Commission's policy statement concerning what qualifies as an "extraordinary

and compelling" reason for release "is not 'applicable' to
compassionate release motions brought by defendants," and
"cannot constrain district courts' discretion to consider
whether any reasons are extraordinary and compelling." United
States v. Brooker, 976 F.3d 228, 236 (2d Cir. 2020).
Accordingly, district courts are free to "consider the full
slate of extraordinary and compelling reasons that an imprisoned
person might bring before them in motions for compassionate
release." Id. at 237; see also United States v. Ciprian, No. 11
Cr. 1032 (PAE), 2021 U.S. Dist. LEXIS 18698, at *5 (S.D.N.Y.
Feb. 1, 2021) ("[T]he Court is not constrained by either §
1B1.13's enumeration of extraordinary and compelling reasons or
by its freestanding requirement that the defendant seeking
release not pose any danger to the community").

    "Since the onset of the COVID-19 pandemic, numerous courts
have held that the presence of preexisting [medical] conditions
that increase the risks associated with the virus, in
combination with the conditions of confinement, constitute
extraordinary and compelling reasons for a reduction in sentence
under 18 U.S.C. § 3582(c)(1)(A)." United States v. Serrano, No.
13 Cr. 58 (AKH), 2020 WL 5259571, at *3 (S.D.N.Y. Sept. 3, 2020)
(collecting cases); see also United States v. Bush, No. 17 Cr.
611-4 (AT), 2021 WL 3097417, at *2 (S.D.N.Y. July 21,
2021) (noting "[c]ourts have granted modified sentences in light

of COVID-19 for inmates with illnesses or injuries that make
them particularly vulnerable to COVID-19"). When considering
such claims, courts in this District "have generally considered
the age of the defendant; the severity and documented history of
the defendant's health conditions, as well as the defendant's
history of managing those conditions in prison; the presence and
proliferation of infections in the prison facility at issue;
[and] the proportion of the term of incarceration that the
defendant has served . . . ." United States v. Franco, No. 12
Cr. 932 (PAC), 2020 WL 4344834, at *2 (S.D.N.Y. June 24, 2020).

Finally, the Court notes that pro se litigants, such as
Brunetti, "are entitled to a liberal construction of their
pleadings, which should be read 'to raise the strongest
arguments that they suggest.'" Green v. United States, 260 F.3d
78, 83 (2d Cir. 2001) (quoting Graham v. Henderson, 89 F.3d 75,
79 (2d Cir. 1996)).

## III.  Analysis

### A. Extraordinary and Compelling Reasons

In the instant motion, Brunetti renews his argument that
his medical conditions, particularly his coronary artery disease
and hypertension, coupled with the presence of COVID-19 at FCI
Coleman, constitute "extraordinary and compelling reasons"
warranting his immediate release. As noted previously, the
Government argues that Brunetti's medical conditions can no

longer justify his release because he is fully vaccinated, and
the COVID-19 vaccines remain highly effective at preventing
severe illness, hospitalization, and death.  (ECF No. 323.)  In
light of the rapid spread of the Omicron variant and its partial
resistance to the COVID-19 vaccines, the Court finds the
Government's argument unpersuasive and concludes that Brunetti
has established that "extraordinary and compelling
circumstances" support his release.

As this Court noted in its April 9 Decision, the Government
does not dispute that Brunetti suffers from coronary artery
disease and hypertension.  See Brunetti, 2021 WL 1326894 *3–5.
According to the Centers for Disease Control and Prevention
("CDC"), both medical conditions increase an individual's risk
of developing serious illness from COVID-19.  See Ctrs. for
Disease Control and Prevention, People with Certain Medical
Conditions, https:// www.cdc.gov/coronavirus/2019-ncov/need-
extra-precautions/people-with-medical-conditions.html (last
visited January 10, 2022).  Throughout the pandemic, courts in
this Circuit have recognized that coronary artery disease and
hypertension, in combination with the dangers of COVID-19,
constitute "extraordinary and compelling reasons" warranting
release.  See United States v. Scparta, No. 18 Cr. 578 (AJN),
2020 WL 1910481, at *9 (S.D.N.Y. Apr. 20, 2020) (concluding
defendant's hypertension supported his release because "the

[CDC] has identified hypertension as a comorbidity that increases the likelihood of serious risk from COVID-19"); see also United States v. Sedge, No. 16 Cr. 537 (KAM), 2020 WL 2475071, at *3 (E.D.N.Y. May 13, 2020) (concluding extraordinary and compelling reasons supported defendant's release "[g]iven that the defendant is over 50 and has demonstrated existing medical conditions that would place him into a high-risk category including hypertension, hyperlipidemia, and coronary artery disease").

The Court disagrees with the Government's assertion that Brunetti's vaccination status, considered in isolation, "substantially weak[ens]" his claim that his medical conditions constitute extraordinary and compelling reasons warranting his release. (ECF No. 323.) Although the COVID-19 vaccines remain effective at preventing severe illness, they provide comparatively little protection against Omicron infection. See Ctrs. for Disease Control and Prevention, Update on Omicron Variant, December 16, 2021, https://www.cdc.gov/vaccines/acip/meetings/downloads/slides-2021-12-16/06-COVID-Scobie-508.pdf (last visited Jan. 10, 2022) (noting that the Pfizer-BioNTech vaccine is only 33% effective at preventing Omicron infection). The variant's ability to evade vaccine-related immunity has resulted in an exponential increase in "breakthrough" infections in vaccinated individuals.

See Ctrs. for Disease Control and Prevention, Potential Rapid
Increase of Omicron Variant Infections in the United States,
https://www.cdc.gov/coronavirus/2019-
ncov/science/forecasting/mathematical-modeling-outbreak.html
(last visited Jan. 10, 2022).  In the state of Florida, where
FCI Coleman is located, COVID-19 cases increased by 566 percent
between December 21, 2021, and January 4, 2022.  See N.Y. Times,
Coronavirus in the U.S.: Latest Map and Case Count (last visited
Jan. 4, 2022),
https://www.nytimes.com/interactive/2021/us/covid-cases.html.
As of the date of this Order, FCI Coleman reports four active
cases of COVID-19 among inmates and seven among staff.  See
COVID-19 Cases, Federal Bureau of Prisons,
https://www.bop.gov/coronavirus/ (last visited Jan. 10, 2022).
These numbers will undoubtedly increase as the Omicron surge
continues.  See United States v. Johnson, No. 98 Cr. 860(7)
(ARR), 2021 WL 5755047, at *4 (E.D.N.Y. Dec. 3, 2021) (noting
"[t]he risk of breakthrough infection is greater among
incarcerated individuals than members of the general public")

      While the majority of vaccinated individuals infected with
the Omicron variant will only experience minor symptoms,
"breakthrough" infections can still cause severe, possibly life-
threatening illness in individuals who suffer from medical
conditions that render them particularly vulnerable to the

virus.  See States v. Salemo, No. 11 Cr. 65 (JSR), 2021 WL
4060354, at *6 (S.D.N.Y. Sept. 7, 2021) (noting vaccinated
defendant with underlying medical conditions remained at high
risk for "a severe case of COVID-19" if infected); see also
Johnson, 2021 WL 5755047, at *5 (concluding vaccinated defendant
"could face serious illness and even death if infected with
COVID-19" due to multiple underlying medical conditions").  "For
that reason, some courts have continued to find the risk of
COVID-19 germane to their analysis of extraordinary and
compelling circumstances, even whe[n] . . . the defendant is
vaccinated."  Johnson, 2021 WL 5755047, at *5 (collecting
cases).

    Here, Brunetti suffers from two comorbidities that increase
his risk of developing severe illness if infected.  Due to the
diminished efficacy of the vaccines and the high rate of
reinfection in carceral settings, it is very likely that
Brunetti will be infected with the Omicron variant if he remains
at FCI Coleman.  See United States v. Zukerman, 451 F. Supp. 3d
329, 334 (S.D.N.Y. 2020) (noting that prison "conditions make
controlling the spread of COVID-19 more challenging and the risk
to vulnerable inmates, such as [the defendant], that much
greater").  Because Brunetti remains at high risk for developing
severe, possibly life-threatening illness if reinfected with
COVID-19, the Court concludes that extraordinary and compelling

13

reasons justify his release.   See United States v. Sawicz, 453
F. Supp. 3d 601, 603-605 (E.D.N.Y. 2020) (concluding that,
because the defendant suffered from hypertension, he was
vulnerable to COVID-19 and thus "the risk of serious illness or
death that he faces in prison constitutes an extraordinary and
compelling reason militating in favor of his release").   This
conclusion reflects the reality that the pandemic has changed
since the Court's April 9 Decision.

### B. The § 3553(a) Factors

The Court now turns to the application of the sentencing
factors enumerated in 18 U.S.C. § 3553(a).   In its Letter in
Opposition, the Government argues that the § 3553(a) factors
"strongly weigh against" Brunetti's release because his two
concurrent life sentences are "still warranted to serve the
purpose of sentencing, including to reflect the serious nature
of his criminal conduct, to afford adequate deterrence, and to
protect the public from future crimes."   (ECF No. 323.)   The
Court disagrees.

In considering the § 3553(a) factors in this case, the
Court is particularly mindful of the disparity between
Brunetti's mandatory life sentence and the sentence a similarly
situated defendant would receive today based on recent changes
in the law.   As noted previously, the First Step Act amended the
recidivist provision of 21 U.S.C. § 841(b)(1)(A) by reducing the

14

mandatory minimum sentence applicable to Brunetti from life to
25 years.  See Pub. L. No. 115-391, § 401(a)(2), 132 Stat. 5194,
5220 (2018).  If Brunetti were sentenced today, he would not
receive two concurrent terms of life imprisonment for his
participation in a large-scale international narcotics
organization, even given his criminal history at the time of his
sentencing.  See United States v. Vargas, 502 F. Supp. 3d 820,
830 (S.D.N.Y. 2020) (concluding life sentence was "unduly harsh"
for member of narcotics conspiracy who was neither "the
ringleader of the operation nor a kingpin of the organization").
Considering Brunetti's "sentence in light of current law, it is
difficult to escape the conclusion that it is both draconian and
exceptionally harsh."  Id. at 826 (internal quotation marks
omitted).

        As for "the nature and circumstances of the offense" and
the need for the sentence to "to reflect the seriousness of the
offense, promote respect for the law, provide just punishment,
[and] afford adequate deterrence," 18 U.S.C. §§ 3553(a)(1)—(2),
the Court finds that these factors do not overcome the unique
circumstances of this case.  There can be no doubt that
Brunetti's criminal conduct, including his history of
recidivism, is very serious.  However, his various narcotics
felonies did not involve the use of violence.  See Scparta, 2020
WL 1910481, at *8 (noting non-violent nature of defendant's

otherwise serious crimes weighed in favor of release).
Additionally, the First Step Act's elimination of the applicable
mandatory minimum life sentence indicates that Congress no
longer considers such a punishment necessary to achieve the
purpose of criminal sentencing.  See United States v. Haynes,
456 F. Supp. 3d 496, 517 (E.D.N.Y. 2020) (noting that the
amendments of the First Step Act amount to "Congressional
declaration[s] of what is now considered adequate punishment").

In this case, Brunetti's twenty years of imprisonment is
sufficient to "promote respect for the law, provide just
punishment, [and] afford adequate deterrence."  18 U.S.C. §
3553(a)(2)(A)—(B).  Although the new mandatory minimum for
Brunetti's criminal conduct is 25 years, the pandemic has
rendered Brunetti's "incarceration harsher and more punitive
than would otherwise have been the case."  United States v.
Rodriguez, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020); see also
United States v. Romero, No. 15 Cr. 445-18 (PAE), 2021 WL
1518622, at *4 (S.D.N.Y. Apr. 16, 2021) (noting "[a] day spent
in prison under extreme lockdown and in fear of contracting a
deadly virus exacts a price on a prisoner beyond that imposed by
an ordinary day in prison" and "[a]lthough not intended as
punishment, incarceration in such conditions is, unavoidably,
more punishing").  Additionally, if good time credit is taken
into account, Brunetti has served 283 months of the new 300-

16

month mandatory minimum.  The Court, accordingly, concludes that Brunetti's term of imprisonment provides just punishment and adequate deterrence.

As for the "history and characteristics of the defendant" and the "need . . . to provide the defendant with [necessary] medical care," these factors undoubtedly weigh in Brunetti's favor due to his unique vulnerability to COVID-19.  See United States v. Pena, No. 15 Cr. 551 (AJN), 2020 WL 2301199, at *4 (S.D.N.Y. May 8, 2020); see also United States v. Rodriguez, No. 17 Cr. 157 (VEC), 2020 WL 3051443, at *3 (S.D.N.Y. June 8, 2020) (noting that the "'history and characteristics of the defendant' and the 'need . . . to provide the defendant with needed . . . medical care,' . . . are factors that can support a sentence reduction during [the COVID-19] pandemic" (citations omitted)). Additionally, despite having no realistic hope of release, Brunetti has undertaken considerable efforts to rehabilitate himself over the past two decades.  See Pepper v. United States, 562 U.S. 476, 491, 131 S.Ct. 1229, 179 L.Ed.2d 196 (2011) (noting "evidence of post sentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing").  While incarcerated, Brunetti has earned a GED, completed 80 additional educational and vocational courses, and maintained a clean disciplinary record.  See United States v.

17

Rodriguez, 492 F. Supp. 3d 306, 314 (S.D.N.Y. 2020) (concluding that the defendant's "extraordinary efforts at rehabilitation" and "remarkable postsentencing record weigh[ed] strongly in favor of a sentence reduction").

Finally, as to the need "to protect the public from further crimes of the defendant," 18 U.S.C. § 3553(a)(2)(C), the Court finds that this factor does not preclude Brunetti's release. Despite Brunetti's criminal history, recidivism in this case is unlikely given Brunetti's age, poor health, and aforementioned rehabilitation. See Rodriguez, 492 F. Supp. 3d at 315 (observing that the defendant's release at the age of 60 would "mak[e] the likelihood of re-offending . . . remote"). Moreover, the Court notes that Brunetti is subject to an Immigrations and Customs Enforcement ("ICE") detainer and will be deported upon his release. See United States v. Rojas, 2020 U.S. Dist. LEXIS 238647, *10 (S.D.N.Y. Dec. 18, 2020) (concluding that the safety of the community will not be adversely affected by the defendants' release because the defendant "will be released to ICE custody and then deported").

Bearing in mind that "the letter kills but the spirit gives life," 2 Corinthians 3:6, the Court concludes that the sentencing factors of § 3553(a) no longer outweigh the "extraordinary and compelling reasons" that support Brunetti's motion for compassionate release.

## IV.  Conclusion

Accordingly, the Court GRANTS Brunetti's Renewed Motion (ECF No. 321) pursuant to 18 U.S.C. § 3582(c)(1)(A).  It is hereby ORDERED that Gino Brunetti, also known as Herbert Alberto Cruz-Ruiz, Inmate No. 86932-012, is RESENTCED to TIME SERVED and 10 years of supervised released subject to any detainer.  It is FURTHER ORDERED that Brunetti is to be released solely to ICE custody for the purposes of initiating his removal to Colombia. This ORDER is STAYED for twenty-one days to allow Brunetti to make any applications to ICE regarding the immigration detainer and to allow the Bureau of Prisons to make all necessary arrangements for Brunetti's release into ICE custody.  See United States v. Beras, No. 99 Cr. 75 (RA), 2020 WL 7496354, at *3 (S.D.N.Y. Dec. 20, 2020).

**SO ORDERED.**

Dated:     New York, New York
           January 10, 2022

John F. Keenan
United States District Judge